1

2

3

4

5

6

7

8

9 UNITED STATES DISTRICT COURT

10 NORTHERN DISTRICT OF CALIFORNIA

11 SAN JOSE DIVISION

| | |
|---|---|
| 12 PI-NET INTERNATIONAL, INC., | Case No. C-12-4958-PSG<br>Case. No. C-12-4959-PSG |
| 13 Plaintiff, | Case No. C-12-4962-PSG |
| 14 v. | **ORDER CONDITIONALLY<br>GRANTING DEFENDANTS'<br>MOTIONS TO STAY LITIGATION<br>PENDING *INTER PARTES* REVIEW** |
| 15 FOCUS BUSINESS BANK, | |
| 16 Defendant. | |
| 17 PI-NET INTERNATIONAL, INC., | **(Re: Docket No. 43, Case No. C-12-4958)<br>(Re: Docket No. 38, Case No. C-12-4959)<br>(Re: Docket No. 44, Case No. C-12-4962)** |
| 18 Plaintiff, | |
| 19 v. | |
| 20 | |
| 21 BRIDGE BANK, N.A., | |
| 22 Defendant. | |
| 23 PI-NET INTERNATIONAL, INC., | |
| 24 Plaintiff, | |
| 25 v. | |
| 26 PRESIDIO BANK, | |
| 27 Defendant. | |

28

Patent disputes are unique in some ways, not so unique in others.  One unique, and frankly, often puzzling aspect of patent cases is that they can proceed in any number of different venues, often at the same time.  Even ignoring the possibility of multiple cases against multiple defendants proceeding in multiple districts, a lone case in a single district case can proceed in parallel with a case before the International Trade Commission even as the Patent and Trademark Office reconsiders the scope and validity of the patent at issue.  The result is that multiple arms (and resources) of the United States government can be called upon, in parallel, and asked to apply multiple standards, even in a dispute involving the same plaintiff, the same defendant, the same patent, and the same accused product.  The court is hard-pressed to identify even a single circumstance outside the patent world where such redundancies are not only permitted, but invited.

To mitigate the burden of these redundancies, a burden born not only by the taxpayers but the parties themselves, the law provides any number of different options to "stay" proceedings in one venue while they continue in another.  In the case of parallel ITC proceedings, 28 U.S.C. § 1659 explicitly provides for a stay of related district court litigation upon a timely request of one of the parties.  With respect to related proceedings at the PTO, courts can invoke their inherent authority to stay the case until the agency figure whether and how the claims at issues will survive a closer look.[1]  Even though courts have exercised this latter authority going back as far as 1977 (when the PTO implemented the first "reissue" procedure to seek reconsideration of

---

[1] *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 134 (Fed. Cir. 1983) (explaining that Congress ultimately deemed an express stay provision to be unnecessary because "*such power already resides with the Court* to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure" (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), U.S. Code Cong. & Admin.  News 1980, pp. 6460, 6463) (emphasis added)).  The stay power even goes so far as to permit the PTO to stay itself, so that a reexamination proceeding may give way to an *inter partes* review proceeding involving the same patent.

an issued patent before the agency),[2] many judges, including this one, have been skeptical of delaying a patentee's day in court for what could turn out to be years as the PTO and the appellate courts complete their work.  With the passage last year of the America Invents Act ("AIA"), and its promise of speedier procedures at the PTO, perhaps the time has come for even the most among us to at least reconsider.

This case presents just such an opportunity.  Defendants Focus Business Bank, Bridge Bank, N.A., and Presidio Bank move for a stay of their respective actions pending *inter partes* review ("IPR") by the PTO of the patents in suit.  Plaintiff PI-Net International ("PI-Net") opposes the motions.  After considering the parties' arguments for and against a stay here, the court is persuaded that a stay is warranted, but only on certain conditions that will mitigate the risk of undue prejudice and gamesmanship, as set forth below.

# I. BACKGROUND

### A. The Patents in Suit

PI-Net owns U.S. Patents Nos. 5,987,500 (filed June 20, 1997) ("'500 Patent") and 8,108,492 (filed Nov. 30, 2009) ("'492 Patent), both with a priority date of November 13, 1995, the filing date of the related provisional application.  The patents are generally directed to "a method and apparatus for performing real-time, two-way transactional capabilities on the Web."[3] PI-Net claims infringement of the '500 and '492 Patents by each of the defendants, and seeks both money damages and a permanent injunction of the defendants' allegedly infringing

---

[2] *See PIC Inc. v. Prescon Corp.*, 77 F.R.D. 678, 681 (D. Del. 1977) (one of the first courts to consider and grant a stay pending the reissue proceeding that "[t]he PTO placed in effect on March 1, 1977, [pursuant to] a new rule, 35 C.F.R. s 1.175 (1977)"); *Fisher Controls Co. v. Control Components, Inc.*, 443 F. Supp. 581, 581 (S.D. Iowa 1977) (granting stay).
[3] '500 Patent Abstract; '492 Patent Abstract.

activities.[4]   In addition to the three defendants here, since 2012, PI-Net has asserted these same two patents against various financial institutions in approximately twenty-eight separate actions in the Central District of California, the District of Delaware, and this district.[5]

### B.  IPR Proceedings

On March 18, 2013, SAP America, Inc. ("SAP") initiated two IPR proceedings at the PTO, one for each patent in suit.  With respect to the '500 Patent, SAP contends that claims 1-6, 10-12, 14-17, and 35 are invalid under 35 U.S.C. § 102(e) as anticipated by two separate U.S. Patents.[6]  As part of its IPT challenge, SAP has proposed claim constructions for twelve claim terms in the '500 Patent.[7]  With respect to the '492 Patent, SAP contends that claims 1-7, 10, and 11 are anticipated by three separate U.S. Patents, and that claims 8 and 12 are each obvious in view of three different prior art combinations.[8]  SAP also proposed claim constructions for eight terms in the '492 Patent.[9]  Claim 7 of the '500 Patent and claim 13 of the '492 patent are the only claims asserted in PI-Net's infringement contentions that are not at issue in SAP's IPR petitions.[10]

Under the AIA, the IPR has replaced the old *inter partes* reexamination ("reexamination").  "A petitioner in an [IPR] may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the

---

[4] See Dkt. No. 1 at  5-6.  For brevity, all docket entries refer to *PI-Net v. Focus Business Bank*, Case No. 12-2958.
[5] Many, but not all, of these cases have either settled or been stayed in view of the IPR proceedings.
[6] *See* Docket No. 43-2, Ex. 1.
[7] *See id.*
[8] *See* Docket No. 43-3, Ex. 2.
[9] *See id.*
[10] *See* Docket No. 43-1 ¶ 8.

basis of prior art consisting of patents or printed publications."[11]  If the PTO issues a final written decision following IPR, the petitioner is thereafter estopped from filing a civil action for patent infringement (or an action before the International Trade Commission under section 337 of the Tariff Act of 1930) asserting "that the claim is invalid on any ground that the petitioner *raised or reasonably could have raised during that* [IPR]."[12]

In contrast to the old reexamination proceeding, where the petitioner was required to show a "substantial new question of patentability" to proceed, to initiate an IPR, the petitioner must show "that the information presented in the petition filed . . . and any response . . . shows that there is a *reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims* challenged in the petition."[13]  Another difference between IPR and the old reexamination proceeding is that the PTO is now required to make a final determination within one year after instituting the IPR, which may be extended up to six months based upon a showing of good cause.[14]  For comparison, the old reexamination proceeding averaged over thirty-seven months in the second quarter of fiscal year 2013.[15]  The PTO is required to issue a decision either granting or denying an IPR petition within three months of the date that the patent holder files a response, or if no response was filed, within three months of the date that the response was due.[16]

Here, the deadline for the PTO's decision on whether to grant SAP's petitions for IPR is September 20, 2013.  The defendants seek a stay of the respective cases starting now, and

---

[11] 35 U.S.C. § 311(b).
[12] *Id.* § 315(e)(2) (emphasis added).
[13] *Id.* § 314(a) (emphasis added).
[14] *Id.* § 316(a)(11).
[15] *See* Case No. 12-4962, Docket No. 44-4, Ex. 4.
[16] *See* 35 U.S.C. § 314(b).  Of course, neither of these metrics considers the added delay of further review by the Federal Circuit, and potentially, the Supreme Court.

1  assuming the PTO grants the IPR petitions, extending through the PTO's final decision at the

2  conclusion of the IPR.

3                                    **II. ANALYSIS**

4      **A.  Legal Standards**

5          Whether to grant a stay pending the PTO's review of a patent involved in the lawsuit is

6  within the court's discretion.[17]  The party seeking the stay has the burden of showing the

7  appropriateness of the stay.[18]  Courts traditionally consider the following three, non-exhaustive

8  factors in determining whether to stay a case pending the PTO's review of a patent in suit: "(1)

9  whether discovery is complete and whether a trial date has been set; (2) whether a stay will

10  simplify the issues in question and trial of the case; and (3) whether a stay would unduly

11  prejudice or present a clear tactical disadvantage to the non-moving party."[19]

12      **B.  Whether Discovery is Complete and a Trial Date Has Been Set**

13          The defendants argue that, because this case "remains essentially in its infancy," the first

14  *Telemac* factor weighs in favor of granting the stay.[20]  PI-Net counters that the case is less an

15  infant and more a toddler, and perhaps even an adolescent, because: (1) trial dates have been set

16  in the *Focus* and *Bridge Bank* cases and a mediation date is set in the *Presidio Bank* case; and (2)

17  it "has expended considerable resources compiling and organizing hundreds of thousands of

18  documents and making them available to defendants on a highly sophisticated, searchable online

19  platform."[21]

20          The court agrees with the defendants that, on balance, this factor favors granting a stay.

21  The court is not persuaded that PI-Net incurred any significant burden or expense in granting

22  defendants access to its document repository, where the defendants must pay an access fee, and

23  _____

24  [17] *See Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).

25  [18] *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

26  [19] *Telemac Corp. v. Teledigital, Inc.,* 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006).
   [20] *See* Docket No. 43 at 4; Case No. 12-4962, Docket No. 44 at 6.

27  [21] *See* Docket No. 45 at 7; Case No. 12-4962, Docket No. 49 at 6.

28

1  where the majority of this database likely existed prior to these cases in conjunction with PI-Net's

2  other litigations regarding the same patent family stemming back to 2008.  While PI-Net did

3  serve preliminary infringement contentions on April 12, 2013, PI-Net has not produced any

4  specific documents, other than this general repository, in accordance with Patent Local Rule 3-

5  2.[22]  The fact that a trial date has been scheduled next year, absent any significant discovery, does

6  not tip this factor against a stay, particular where, as here, if the PTO denies SAP's IPR petition,

7  the court will hold the defendants Focus Business Bank and Bridge Bank to the trial date

8  currently set.

9  **C.  Whether a Stay Will Simplify the Issues**

10  As for *Telemac* factor two, the defendants argue that a stay would necessarily simplify the

11  issues because the entire dispute will become moot if the PTO invalidates the claims.  All but two

12  of the twenty-five claims asserted in this action are at issue in SAP's IPR petition.  Even if these

13  claims are not invalidated, the defendants argue, the IPR could either encourage settlement or

14  alternatively lead to amendments to the claims that create intervening rights, limiting potential

15  damages.  PI-Net counters that there is of course no guarantee that an IPR will simplify the issues

16  before the court, rendering the defendants' promise of simplification at best a more possibility.

17  Although there is certainly no guarantee that an IPR will simplify the issues before the

18  court, the higher standard for instituting an IPR ("reasonable likelihood that the petitioner would

19  prevail with respect to at least 1 of the claims challenged in the petition" as opposed to

20  "substantial new question of patentability") gives some promise that at least certain challenged

21  claims will be struck down or amended if the PTO grants the petitions.  In addition, the limited

22  statistics available to the court do show that as of the date of the motion, the PTO has initiated

23  thirty-five IPR petitions and rejected only two.[23]  The court concludes that this factor tips in favor

24  of granting a stay.

25  _____

26  [22] *See* Docket No. 47-1 ¶ 22.

27  [23] *See* Docket No. 43-8 Ex. 7.

28

**D.  Whether a Stay Would Unduly Prejudice PI-Net**

Despite the first two factors weighing in favor of a stay, if PI-Net would face undue prejudice as a result of the stay, the court would be compelled to exercise its discretion to deny the stay.[24]  "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, *if there is even a fair possibility that the stay for which he prays will work damage to some one else*."[25]

Defendants argue that there would be <u>no</u> prejudice to PI-Net in granting a stay because: (1) PI-Net has not yet invested substantial expense and time in this litigation; (2) defendant's promptly filed the motion to stay after learning of SAP's IPR petitions, which were filed the day before the case management conference; and (3) "PI-Net does not market any products or services covered by the claims of the '500 or '492 Patents that compete with defendants' accused operations," has not sought a preliminary injunction, and as such, money damages are an adequate remedy in this case.[26]

PI-Net counters that, despite the shorter "one year" time period, the IPR, if initiated could extend until March 2015 if the PTO utilizes the six-month extension.  According to PI-Net, it will be prejudiced if defendants here are "permitted to sit on the sidelines while the other related and similar cases proceed to claim construction."[27]  PI-Net asserts that a stay could potentially: (1) prevent it "from obtaining key evidence that may be lost while the [IPRs] are pending," e.g., "[d]ocuments could be misplaced and the memories of key fact witnesses are likely to fade with time"; or (2) result in a jury "hav[ing] an exceedingly difficult time understanding the value of an outdated or lightly used technology."[28]

---

[24] *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936).
[25] *Id.* (emphasis added)
[26] *See* Docket No 43 at 6-7.
[27] *See* Docket No 45 at 9.
[28] *Id.* 9-10.

1   The court is not persuaded that PI-Net would suffer any real prejudice here as a result of a

2   stay.  While the court recognizes that the delay could be well over a year, especially in the event

3   of an appeal, and that certain prejudices are inherent in such delays, PI-Net has failed to point to

4   any *specific* prejudice from a delay that is more than speculative.  Delays based on the length of

5   the PTO's review *standing alone* do not amount to undue prejudice.[29]  Here, defendants filed the

6   motions to stay in their respective cases immediately following SAP's IPR petitions, so there is

7   no evidence of any dilatory motives or tactics on the defendants' part.[30]  Further, there is no

8   evidence that SAP's petitions are brought in bad faith.  Finally, because PI-Net is not in

9   competition with the defendants, but rather concentrates its efforts on licensing and litigating its

10  patents—as is its right— money damages are likely to be an adequate remedy, and PI-Net is not

11  seeking a preliminary injunction in this case.[31]  The delays inherent in a stay—absent any direct

12  competition between the parties in the marketplace or any real risk that evidence will be lost—are

13  insufficient to persuade the court that this factor tips the scale in favor of staying the case.

---

[29] *See Telemac Corp.*, 450 F.Supp.2d at 1111 (recognizing that "the likely length of reexamination is not, in itself, evidence of undue prejudice," but nevertheless finding a stay appropriate where the case was (1) *not at an early stage* and (2) where *the evidence suggested that defendants intentionally filed incomplete requests for reexamination solely to delay the litigation*, neither factor of which is present here); *see also Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 12-3864, 2012 WL 6020012, at *4 (N.D. Cal. Dec. 3, 2012).

[30] While the court recognizes that it may consider the stage of the IPR proceeding in comparison to the stage of this proceeding in determining whether to grant the stay, *see, e.g., MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 565 (E.D. Va. 2007), the court finds the preferable practice is for defendants to seek a stay as early as possible to avoid further advancing the litigation and causing the parties to incur unnecessary expense.  It would be unfair to suggest that, in cases where both district court litigation and IPR proceedings are at their infancy, defendants are required to wait until the IPR is underway and the PTO review is sufficiently far along to request a stay.

[31] *See, e.g.*, Order Granting Motion to Stay, *PI-Net Int'l v. Avis Budget Grp., Inc.*, No. 12-4036, slip op. 5 (C.D. Cal. June 25, 2013) ("Here, there is no potential for irreparable harm, as P[I]-Net is not a competitor of Defendants, and any harm suffered could be compensated with monetary damages."); *Agavo Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc*, No. 10-2863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.").

1     Because it was SAP and *not* the defendants that filed the IPR petitions, however, the court

2     appreciates the possibility that the filing was merely a tactic by the defendants together with their

3     friend to take multiple  bites at the invalidity apple while avoiding the estoppel provisions of 35

4     U.S.C. § 315(e) in the respective district court litigations.  To avoid this possibility, the court

5     finds it appropriate to condition a stay on the defendants agreeing to be bound by an estoppel

6     similar to the provisions of Section 315(e) such that they may not assert in this suit that the claim

7     is invalid on any ground that SAP raised or reasonably could have raised during the IPR.  Also, as

8     mentioned above, to mitigate the burden of a stay on PI-Net, in the event that the PTO *denies*

9     SAP's IPR petition, the court holds that the parties in the *Focus* and *Bridge Bank* cases must

10    adhere to the original trial date so that PI-Net suffers no prejudice from any IPR petition that falls

11    well short of its intended target.

### III.  CONCLUSION

12

13    (1) Because all three factors and all other practical consideration weigh in favor of staying

14         the case, the court conditionally GRANTS each defendant's motion to stay their

15         respective cases up until the September 2013 date that the PTO makes a final

16         determination on whether to grant SAP's IPR petitions.

17    (2) The stay is conditioned on each defendant's consent to be estopped from raising any

18         invalidity defense that SAP raised or reasonably could have raised in the IPR

19         proceedings.  Each defendant must file its consent with the court within seven days of

20         the date of this order or the stay will not go into effect.

21    (3) In the event all three defendants consent to the estoppel provision, the stay goes into

22         immediate effect.  If less than all defendant parties consent, no stay will go into effect.

23    (4) If the stay goes into effect, the court orders the parties to file a joint status report

24         within seven days of the PTO's final decision on whether to grant SAP's IRP

25         petitions, informing the court of the PTO's decision.

26    (5) If the stay goes into effect and the PTO grants SAP's IPR petitions, the stay will

27         remain in effect and the parties shall file a joint status update on the status of the IRP

28         proceedings every three months from the date of the PTO's initial determination to

1    initiate the IPR. Upon the conclusion of the IPR proceedings, the court will permit a

2    motion to immediately lift the stay.

3        (6) In the event that the PTO denies SAP's IPR petitions, the court will permit a motion to

4    immediately lift the stay.  Under this circumstance any current trial date will be

5    reinstated.

6

7    **IT IS SO ORDERED.**

8

9

10   Dated:  August 16, 2013

     Paul S. Grewal
     United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28